FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 09, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIMAS ARIAS DE-JESUS,<br><br>Defendant. | No: 2:19-CR-00156-RHW-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

Before the Court is Defendant's Motion to Dismiss Indictment, ECF No. 38. The Court held a hearing on February 20, 2020, in Spokane, Washington. Defendant was present and represented by Francisco Carriedo, while Assistant United States Attorney Timothy Ohms represented the Government. The Court has considered the parties' arguments, briefing, and the record, and is fully informed. For the reasons explained below, the Court denies Defendant's Motion to Dismiss Indictment.

### BACKGROUND AND RELEVANT FACTS

Defendant is an alleged citizen of Mexico, who first came to the United States in 2009. In 2012, Defendant was arrested on an assault charge and taken to the Adams

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 1

County Jail. On May 24, 2012, while incarcerated, Defendant was served with a Notice to Appear ("NTA") by the Department of Homeland Security. The NTA alleged that Defendant was a non-citizen without legal status, and thus removable, and ordered that he appear before an immigration judge for a removal hearing at a date and time to be set. There is no evidence that Defendant was later provided notice of the date and time of his removal hearing. Even so, Defendant attended his removal hearing, at which an order of removal was entered, and he was subsequently removed from the U.S.

Five years later, Defendant encountered Border Patrol agents while in custody at the Adams County Jail. Agents determined that Defendant was not a U.S. citizen, that he had previously been deported, and that he did not have express consent for re-entry. On October 1, 2019, Defendant was indicted in the Eastern District of Washington for illegal reentry into the United States, in violation of 8 U.S.C. § 1326. He now moves this Court to dismiss the Indictment.

## LEGAL STANDARD

A defendant may move to dismiss an Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) on the ground that the indictment "fail[s] to state an offense." A predicate to a violation of 8 U.S.C. § 1326 is the existence and legal validity of a prior order of removal. *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014). Thus, a defendant charged with violating 8 U.S.C. § 1326 may challenge the validity of his underlying removal order. *See United States v. Pallares-Galan*,

359 F.3d 1088, 1095 (9th Cir. 2004); 8 U.S.C. § 1326(d).

A defendant challenging the validity of his removal must generally prove three things: (1) that he exhausted all available administrative remedies; (2) that the proceedings "improperly deprived [him] of the opportunity for judicial review;" and (3) that the removal was "fundamentally unfair." *United States v. Ray-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting 8 U.S.C. § 1326(d)). However, a defendant may also argue, as here, that the immigration court that entered the removal order lacked jurisdiction to do so. If the immigration court lacked jurisdiction, the removal order is void and cannot serve as the basis for a violation of § 1326, and a defendant need not establish the elements of § 1326(d). *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003) (the BIA's lack of authority to enter a defendant's removal order "renders that component of his proceedings 'in essence, a legal nullity'") (citation omitted)).

## DISCUSSION

Defendant argues that the Indictment should be dismissed, as the underlying removal order against him is void due to the issuing court's lack of subject matter jurisdiction. Relying on the Ninth Circuit's opinion in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), he contends that the Immigration Court lacked subject matter jurisdiction because the notice to appear did not specify the date and time for his hearing and he did not receive a subsequent notice of hearing, as required by the regulations.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 3

In response, the Government points to the Board of Immigration Appeals' ("BIA") recent decision, *Matter of Rosales Vargas*, 27 I. & N. Dec. 745 (BIA 2020), which holds that the regulations at issue in this case are claim processing rules that do not impact subject matter jurisdiction. Though Defendant failed to address *Rosales Vargas* in his Motion to Dismiss, his Reply argues that the decision "is not binding, not legally sound, and directly contradicts Ninth Circuit case law."

Thus, the question before the Court is whether the Immigration Court had subject matter jurisdiction over Defendant's removal proceedings, notwithstanding the absence of date and time information in the notice to appear, and without evidence of a subsequent notice of hearing providing such information.

**I.     Applicable Law**

The regulation central to this issue, entitled "Jurisdiction and commencement of proceedings," provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court."[1] 8 C.F.R. § 1003.14. Here, the charging document is the NTA.

---

[1] Removal proceedings are civil in nature and controlled by both statute and regulation. *See* 8 C.F.R. § 1003.10(b) (in deciding the individual cases before them, "immigration judges shall exercise the powers and duties delegated to them by the Act and by the Attorney General through regulation"). Such proceedings are statutorily governed by the Immigration and Nationality Act, as amended by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigration Responsibility Act of 1996. These acts delegate to immigration courts, exclusive jurisdiction over proceedings to determine the "inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1), (3). They also define the manner in which the Attorney General is to exercise his or her authority to order the administrative removal of aliens. *Noriega-Lopez*, 335 F.3d at 882. Exercising this congressionally delegated authority, the Attorney General has promulgated regulations that govern removal proceedings. *Karingithi*, 913 F.3d at 1159; 8 U.S.C. 1003(g)(2).

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 4

The statutes and regulations governing removal hearings provide distinct definitions for a NTA. To determine the regulatory definition of a NTA and its requirements, one must look to other, interrelated regulations. For instance, the regulations require that a NTA must include specified information, such as "[t]he nature of the proceedings," "[t]he acts or conduct alleged to be in violation of law," and "[n]otice that the alien may be represented, at no cost to the government, by counsel or other representative." 8 C.F.R. § 1003.15(b). Importantly, the regulations do not require that the time and date of proceedings appear in the initial notice. *See id*; 8 C.F.R. § 1003.18(b). Rather, they compel inclusion of such information "*where practicable*." 8 C.F.R. § 1003.18(b) (emphasis added). When "that information is not contained in the Notice to Appear," the regulation requires the IJ to "schedul[e] the initial removal hearing and provid[e] notice to the government and the alien of the time, place, and date of hearing." *Id*.

The relevant statute, 8 U.S.C. § 1229(a)(1), requires written notice, or the NTA be given in person to the alien, specifying the following: (A) The nature of the proceedings; (C) The acts or conduct alleged to be in violation of law; (E) The alien may be represented by counsel; and (G)(i) The time and place at which the hearings will be held. Notably, § 1229 does not make any reference to jurisdiction. In fact, § 1229a, the statute that grants immigration courts exclusive jurisdiction over removal proceedings, does so without caveat and absent reference to § 1229. *See* 8 U.S.C. § 1229a(a)(1), (3).

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 5

In *Karingithi v. Whitaker*, the Ninth Circuit considered these differences in the statutory and regulatory provisions and resolved which authority governs an immigration court's jurisdiction. 913 F.3d at 1160. The Circuit concluded the regulatory definition of a NTA, not the statutory definition, governs the Immigration Court's jurisdiction. *Id*. It relied on the obvious distinctions between the provisions, and § 1229(a)'s "silen[ce] as to the jurisdiction of the Immigration Court;" as well as substantial deference to the BIA's precedential opinion in the *Matter of Bermudez Cota*, 27 I. & N. Dec. 441 (BIA 2018).

## II. This Court is Not Bound by the Holding in *Karingithi*

Neither the Supreme Court nor the Ninth Circuit have specifically analyzed whether a NTA void of time and date information, that is not followed by a notice of hearing, divests an Immigration Court of subject matter jurisdiction. In *Karingithi*, the Ninth Circuit held that a defective NTA can nonetheless vest jurisdiction with an Immigration Court, so long as date and time information is timely provided to the non-citizen through a notice of hearing. *See id.* at 1162. Nowhere in *Karingithi* does the Circuit indicate or explain that the reference to "jurisdiction" means "subject matter jurisdiction." This lack of specificity is noted and analyzed by the BIA in *Rosales Vargas*. *See Rosales Vargas*, 27 I. & N. Dec. at 751, n. 10 ("In *Matter of Bermudez-Cota*, we did not address or decide whether our reference to the term 'jurisdiction' implicates the subject matter jurisdiction of the Immigration Courts. We read *Karingithi* the same way.").

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 6

Further, the last line of *Karingithi* expressly leaves open the question before this Court—whether an immigration court would have jurisdiction over removal proceedings in which the alien had not received date and time information "in a timely fashion." *Id*. ("Thus, we do not decide whether jurisdiction would have vested if she had not received this information in a timely fashion.").

*Karingithi* is not binding on this Court for two reasons: first, the Circuit intentionally refused to determine whether jurisdiction would vest in the situation like the one before this Court; and second, it failed to define the regulation's use of the term jurisdiction, even though it could have. *Karingithi's* final sentence and its lack of specificity as to the type of jurisdiction it refers to make it distinguishable from the issue at hand and therefore, not binding on the matter before this Court.

### III. The BIA's Decision in *Rosales Vargas* is Entitled to Substantial Deference

Even assuming *Karingithi's* holding could be extended to apply to this issue, the BIA's decision in *Rosales Vargas* should be given substantial deference. *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 516 (9th Cir. 2012) (en banc) (substantial deference should be given to a BIA's decision, even where it runs contrary to a previous ruling by a court of appeals).

In *Rosales Vargas*, the BIA tackled the issue of defining the regulation's ambiguous use of jurisdiction head-on. In its analysis, the BIA held that jurisdiction, as it is used in 8 C.F.R. § 1003.14(a), does not refer to subject matter jurisdiction

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

and that the regulations relevant to this case are not jurisdictional, rather they are procedural "claim-processing or internal docketing rules." *Rosales Vargas*, 27 I. & N. Dec. at 747 ("We conclude that the regulations at issue are 'claim-processing' or 'internal docketing' rules, which do not implicate subject matter jurisdiction, and that a deficiency in the notice to appear can be remedied by providing the information required by the regulations in a later notice of hearing.").

### A. An agency's interpretation of its own ambiguous regulation is given substantial deference

The BIA's interpretation of § 1003.14's use of the term jurisdiction is entitled to substantial deference. "[A]n agency's interpretation of its regulations is given "substantial deference," which differs slightly from the traditional '*Chevron* deference' given to agency interpretations of statutes." *See, e.g., Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011); *Lal v. INS*, 255 F.3d 998, 1004 n. 3 (9th Cir. 2001) ("Because this case involves the interpretation by the BIA of its own regulation (and not the language of a statute) we look to the line of cases including *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995), *Thomas Jefferson University v. Shalala*, 512 U.S. 504 (1994), and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945), and not the line of cases involving interpretations by agencies of Congressional legislation, including *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).").

"When the meaning of regulatory language is ambiguous, the agency's

interpretation of the regulation controls so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Lal*, 255 F.3d at 1004 (quoting *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51 (1991)) (internal quotation marks omitted). Stated another way, an agency's interpretations of its ambiguous regulations are "controlling unless plainly erroneous or inconsistent with the regulation" or there is other "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted). Courts therefore defer unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988).

Such deference may be given to the agency even where it runs contrary to circuit court precedent. The Ninth Circuit has held that courts "must treat an agency decision that is contrary to a ruling previously set forth by a court of appeals and … prompts the court of appeals to defer to the agency, as [the court] would if the agency had changed its own rules." *Garfias-Rodriguez*, 702 F.3d at 516 (explaining that to do otherwise would "ignore the effect of *Chevron*, and treat the agency decision as though it had issued from the court itself").

Although the court in *Garfias-Rodriguez* was analyzing an agency's interpretation of a statute, the same logic applies here. As such, so long as the BIA's

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 9

interpretation does not run afoul of a court's construction that follows from the unambiguous terms of the regulation, it controls. *See National Cable & Telecomm. Servs. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

### B. The BIA's interpretation of the ambiguity is reasonable

As the Supreme Court acknowledged, "[j]urisdiction … is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (internal quotation marks omitted). Thus, in *Rosales Vargas*, the BIA notes the term's ambiguity and analyzes the regulation's use of the word. *Rosales Vargas*, 27 I. & N. Dec. at 751. ("the term 'jurisdiction' is not limited to subject matter jurisdiction, and we have never specifically considered whether this regulation implicates the subject matter jurisdiction of the Immigration Courts.").

Defendant argues that the regulation, 8 C.F.R. § 1003.14(a), is not ambiguous because the Ninth Circuit would have addressed or at least acknowledged the ambiguity in *Karingithi*. However, *Karingithi* does in fact address the regulation's ambiguity and provides that the BIA's interpretations of its regulations are due "substantial deference," The Circuit deferred to the BIA's interpretation of the ambiguous regulations, noting the BIA's *Bermudez-Cota* decision "easily meets this

standard and is consistent with our analysis." *Karingithi*, 913 F.3d at 1161. In doing so, the *Karingithi* not only acknowledges the standard, but also affords the BIA's interpretation of the regulation substantial deference. Because such an analysis is only necessary when interpreting an ambiguous regulation, it is clear the Ninth Circuit was indicating that the regulation is in fact ambiguous.[2]

Moreover, it is undisputed that several Circuits have split on whether the regulation confers subject matter jurisdiction or is a "claims processing" rule. Such a split demonstrates the ambiguity with the use of the term.

Accordingly, the Court finds that the regulation is ambiguous and the agency's interpretation is entitled to substantial deference because the BIA's interpretation is consistent with the regulations' plain language and context. In its opinion, the BIA provides ample reasoning as to why its interpretation is consistent with the regulation and its prior decision in *Bermudez-Cota*. Because the text of the regulation does not specifically reference subject matter jurisdiction and because the agency provides sound reasoning for its interpretation, the BIA's decision that the relevant regulations are claim-processing rules that do not affect subject matter jurisdiction controls, especially absent an explicit Ninth Circuit ruling on the issue.

---

[2] In *Rosales Vargas*, the BIA notes the Circuit's deference to its interpretation of the regulations. *Rosales Vargas*, 27 I. & N. Dec. at 748.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
~ 11

## CONCLUSION

Because the BIA's interpretation of its regulation is entitled to substantial deference, and the failure to provide subsequent notice of the date and time of the hearing does not strip the immigration judge of jurisdiction to hear Defendant's case, his underlying removal order is not void for lack of subject matter jurisdiction. Defendant has not provided any other grounds for dismissal. As such, the Court **DENIES** Defendant's Motion to Dismiss Indictment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss Indictment, **ECF No. 38**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to file this Order and provide copies to counsel.

**DATED** this March 9, 2020.

          *s/ Robert H. Whaley*
          ROBERT H. WHALEY
          Senior United States District Judge